627 F.2d 489
 201 U.S.App.D.C. 30
 DIAMOND INTERNATIONAL CORPORATION, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
American Telephone and Telegraph Company et al., Intervenors.
 No. 79-1192.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 11, 1980.
Decided June 12, 1980.
 
 William J. Byrnes, Washington, D. C., for petitioner.
 Keith Fagan, Counsel, F. C. C., Washington, D. C., with whom Robert R. Bruce, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, John E. Ingle, Asst. Gen. Counsel, Roberta L. Cook, Counsel, F. C. C., Robert B. Nicholson and Margaret G. Halpern, Attys., Dept. of Justice, Washington, D. C., were on brief, for respondents.
 Alfred Winchell Whittaker, Washington, D. C., with whom Marian Jean Dabney was on brief, for intervenor.
 Also Edgar Mayfield and Edmund B. Raftis, Bedminister, N. J., entered appearances for intervenor.
 Before ROBINSON and MIKVA, Circuit Judges, and JUNE L. GREEN,* United States District Court Judge for the District of Columbia.
 Opinion PER CURIAM:
 
 PER CURIAM:
 
 1
 Diamond International Corporation (Diamond) petitioned this court to review a ruling by the Federal Communications Commission which dismissed Diamond's complaint against the American Telephone and Telegraph Company (AT&T) and its local subsidiary, New York Telephone Company (New York Tel.). Diamond Int'l Corp. v. American Tel. & Tel., 70 F.C.C.2d 656 (1979). At issue is the lawfulness of certain charges billed to Diamond, pursuant to a New York Tel. intrastate tariff,[1] arising from the installation of Diamond's interstate private line network.
 
 
 2
 Diamond maintains that the only appropriate charges are those set forth in AT& T's interstate private line Tariff FCC No. 260. Thus, Diamond argues that the charges under New York Tel.'s intrastate tariff constitute "double billing." Moreover, Diamond contends that the Communications Act of 1934, 47 U.S.C. §§ 151-609, requires that the disputed charges be included in an interstate tariff, 47 U.S.C. § 203, and that the charges billed to Diamond are unreasonably discriminatory in violation of section 202(a) of the Act, 47 U.S.C. § 202(a).[2] The Commission ruled that the services for which Diamond was charged were not included in AT&T's interstate tariff and were properly in New York Tel.'s intrastate tariff. We hold that the Commission acted within its statutory authority and that its conclusions were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.[3]
 
 
 3
 Diamond's corporate headquarters in New York City has private branch exchange (PBX) service[4] furnished by New York Tel. In 1972, Diamond ordered a private telephone network, including twenty-two interstate private lines which were subsequently connected to Diamond's PBX switchboard in New York.
 
 
 4
 In its simplest form, an interstate private line network consists of two components an interstate transmission line and a station terminal capable of gaining access to the line and alerting the other end. The parties agree that AT&T Tariff FCC No. 260 covers this basic service in its entirety. In the instant case, Diamond ordered a more sophisticated system which has some dial signalling and switching capability. That additional capability enables a caller to ring a particular point on Diamond's network without ringing every other point on the circuit. In order to provide this feature, New York Tel. had to modify the PBX equipment in Diamond's headquarters. As a result, New York Tel. has imposed additional charges in its billings to Diamond for PBX service. Those charges are claimed by New York Tel. and AT&T to reflect the enhanced capability of Diamond's PBX in accordance with New York Tel.'s intrastate tariff.
 
 
 5
 Believing the additional charges to be unlawful, Diamond complained informally to the Commission. The Chief of the Commission's Tariffs Branch responded to Diamond in a letter, stating in relevant part:
 
 
 6
 Based on the information before us at this time, it is our view that the charges in dispute are charges for service associated with your company's Private Branch Exchange system (PBX) rather than your company's interstate channel network. As you know, charges for P.B.X. service are set forth in tariffs filed with the various state regulatory agencies and are not subject to the jurisdiction of this Commission. Therefore, we do not feel that we can pursue this matter further under our rules pertaining to informal complaints. Your company is entitled, however, to file a formal complaint with this Commission in order to determine the jurisdictional aspect of this matter or you may wish to pursue this matter with the New York Public Service Commission.
 
 
 7
 (Letter from Paul S. Darling to Richard L. Wagner (May 22, 1975), at J.A. 30)
 
 
 8
 Diamond chose to pursue its complaint first with the New York Public Service Commission (State Commission). Following an informal hearing, the State Commission's hearing officer concluded that the charges were appropriate and in accordance with New York Tel.'s intrastate tariff. The State Commission affirmed the hearing officer's conclusion.
 
 
 9
 On July 20, 1976, Diamond filed a formal complaint before the Federal Communications Commission, raising questions concerning the interpretation of AT&T Tariff FCC No. 260 and challenging the State Commission's jurisdiction to permit a tariff charge on equipment used to gain access to an interstate service. The Commission declared that "(s)ections 2.5 and 3.2.2(c)(3) of AT&T Tariff No. 260 clearly state that termination to a PBX at no additional charge is provided only when the PBX is not arranged for dial signalling."[5] 70 F.C.C.2d at 658. Having determined that Diamond's PBX's had been altered to allow some dial signalling and switching capability, the Commission found that AT&T's interstate tariff did not include charges for the PBX modifications.
 
 
 10
 We find the Commission's reading of AT&T Tariff FCC No. 260 to be reasonable, based upon factors within the Commission's expertise, and thus, entitled to deference. See, e. g., Western Union Tel. Co. v. FCC, 541 F.2d 346, 351 (3rd Cir. 1976), cert. denied, 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977). Section 2.5 defines the terminal equipment offered by AT&T and section 3.2.2(c) (3) speaks of the charge for that equipment. Their terms explicitly limit the offering to terminal equipment which is "not arranged for dial signalling."
 
 
 11
 Diamond contends that the phrase "not arranged for dial signalling" in sections 2.5 and 3.2.2(c)(3) signifies that the customer must look to another section of the tariff for charges governing dial signalling. Diamond claims to find it in section 4.2.1 which offers an "arrangement to permit the transmission of dial or TOUCH-TONE signals, on a two-private line, between stations suitably equipped to transmit and/or receive dial or TOUCH-TONE signals." Pursuant to section 4.2.1, there is no charge for this arrangement when a customer orders what is referred to in the tariff as an "Interexchange Channel Switching Arrangement."[6] Since Diamond had obtained such Switching Arrangements for its private lines, it asserts that there should be no charge for dial signalling.
 
 
 12
 Besides adding its own gloss to sections 2.5 and 3.2.2(c)(3), Diamond overlooks the distinction drawn between the transmission line and the PBX terminal (station) within section 4.2.1. In essence, the provision offers the transmission of dial signals over the private line between stations suitably equipped for dial signalling. Diamond claims that the use of the word "arrangement" means whatever is necessary, thereby encompassing whatever is done to suitably equip the PBX station. However, it is no less reasonable to conclude, as the Commission apparently did within its technical expertise, that the "arrangement" in section 4.2.1 refers only to providing transmission lines that can carry the dial signals. It does not entail equipping the station terminals to transmit or receive those signals. Hence, the state tariff charges imposed for the modifications to Diamond's PBX do not duplicate charges under AT&T Tariff FCC No. 260.
 
 
 13
 Diamond further argues that even if the charges for its enhanced PBX equipment are not included in AT&T's interstate tariff, the Communications Act precludes New York Tel.'s state tariff charges for the modifications because the equipment involved is used to gain access to interstate service. We conclude that the Commission's determination that the charges are permissibly contained in the state tariff is consistent with the mandate of the Communications Act.
 
 
 14
 The Communications Act was designed to divide jurisdiction between the Federal Communications Commission and state agencies the former regulates interstate communications, 47 U.S.C. § 151, while the latter regulates intrastate communications, 47 U.S.C. §§ 152(b), 221(b). Conflicts in this regulatory scheme have arisen on occasion because interstate communications often utilize equipment, such as the PBX station terminals in this case, which necessarily serves both interstate and intrastate communications. See State of California v. FCC, 567 F.2d 84 (D.C.Cir.1977), cert. denied, 434 U.S. 1010, 98 S.Ct. 721, 54 L.Ed.2d 753 (1978); North Carolina Utilities Comm'n. v. FCC, 552 F.2d 1036 (4th Cir. 1977), cert. denied, 434 U.S. 874, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977) ("NCUC II"); North Carolina Utilities Comm'n. v. FCC, 537 F.2d 787 (4th Cir. 1976), cert. denied, 429 U.S. 1027, 97 S.Ct. 651, 50 L.Ed.2d 631 (1976) ("NCUC I"). Fundamental in the resolution of such conflicts is a tenet of administrative law that "an agency's construction of its enabling statute is entitled to deference from the courts." NCUC II, supra, 552 F.2d at 1049. The influence of this principle is especially applicable to the instant case where two regulatory agencies with overlapping jurisdiction have interpreted their responsibilities under the Communications Act in a consistent fashion. Both the Federal Communications Commission and the New York Public Service Commission are in agreement that Diamond is subject to the additional charges for the dial signalling feature pursuant to New York Tel.'s state tariff. There is no substantial reason, mandated by statute, for setting aside the Commission's decision.
 
 
 15
 In its decision, the Commission noted that "(g)enerally, the charges relating to PBX's and related services, even though used in connection with interstate service, are permitted to be contained in the exchange tariffs filed with the states where such facilities are also used in connection with (local) exchange service." 70 F.C.C.2d at 659-60. Recognizing its responsibility over interstate communications, the Commission went on to declare that " 'while we hesitate ( ) to exercise jurisdiction in such a way as to preclude exercise of jurisdiction by state or local bodies we would do so where (t)he record reveals a very clear need for such action . . . .' " Id. at 660 n.11, quoting language approved in Telerent Leasing Corp., 45 F.C.C.2d 204, 219 (1974), aff'd sub nom. NCUC I, supra, 537 F.2d 787. Where state regulation has been deemed to be overly burdensome on interstate communications, the Commission has interceded to protect national communications concerns. See, e. g., In re New York Tel. Co., FCC No. 80-95 (Mar. 12, 1980) (Commission exercised jurisdiction where state tariff surcharge imposed solely on interstate customers). The Commission concluded that the instant case did not present the requisite need for Commission intervention in the state regulatory scheme.
 
 
 16
 Nothing in the record suggests that the Commission's decision to refrain from exercising jurisdiction over the additional PBX charges billed to Diamond will substantially affect the conduct or development of interstate communications. That being the case, and also cognizant of the historic regulation of terminal equipment by the states, see NCUC II, supra, 552 F.2d at 1049, we are satisfied that there has been no violation of the Communications Act. We emphasize that this is not to say that the Federal Communications Commission could never exercise its primary jurisdiction over PBX terminal equipment "should the need for federal action arise." Id. at 1050. It simply means that the Commission's decision under review is in keeping with the congressional goal of developing a unified national communications system, 47 U.S.C. § 151, while maintaining the Act's reservations of powers to state regulatory agencies, 47 U.S.C. §§ 152(b), 221(b).[7]
 
 
 17
 Diamond raises two other points regarding the Commission's interpretation of AT&T Tariff FCC No. 260 which warrant discussion. First, Diamond maintains that the Commission was required to follow existing precedent by resolving any ambiguity in the tariff in favor of the customer. See Associated Press v. FCC, 452 F.2d 1290 (D.C.Cir.1971). In its decision, the Commission stated that it was foregoing its normal rule regarding ambiguous tariff language because the disputed charges "are properly in New York Tel.'s intrastate or exchange tariff . . . (which) is within the jurisdiction of the New York Public Service Commission." 70 F.C.C.2d at 659. In so doing, the Commission properly explained its departure from prior precedent. Columbia Broadcasting System, Inc. v. FCC, 454 F.2d 1018, 1027 (D.C.Cir.1971). The Commission determined that, in these circumstances, the prerogatives reserved to the states by the Communications Act control. Moreover, the Commission's suggestion that "AT&T should promptly amend its tariff so as to remove all ambiguity on this point," 70 F.C.C.2d at 659, is to be commended rather than condemned. Acknowledging that AT&T was not required to designate the charges for the PBX modifications in its interstate tariff, the Commission felt the information should be provided "so that the customer clearly understands what equipment and services must be acquired under intrastate tariffs at additional charges." Id. While this may offer little solace to Diamond, neither does it enhance Diamond's claim that the statute has been violated.
 
 
 18
 Second, Diamond points out the Commission's less than clear reconciliation of the AT&T tariff language with the language of an AT&T manual. Indeed, this created unnecessary confusion. Early in its decision, the Commission found that sections 2.5 and 3.2.2(c)(3) of AT&T Tariff FCC No. 260 clearly limit the offering of termination to a PBX without charge to PBX's not arranged for dial signalling. The Commission then presented arguments by the parties which were based upon conflicting portions of AT&T's Intercities Services Manual. The Commission properly dismissed these arguments, stating that "the AT&T Tariff should be controlling rather than the Manual." 70 F.C.C.2d at 659; see 47 U.S.C. § 203(a); 47 C.F.R. § 61.55(f). Yet the Commission went on to declare that "(a)fter carefully examining the tariff, we believe that the statement at page 142 of the Manual cited by Defendants is the appropriate interpretation for the case before us, although this language is not reflected in the tariff." 70 F.C.C.2d at 659. Under the circumstances, we think that references to the Manual are inappropriate. While it may provide a convenient shorthand construction of the tariff, the Commission would be well advised to explain its reasons within the confines of the tariff itself.
 
 
 19
 Even acknowledging the lack of precision in its Memorandum Opinion, we believe the Commission's decision must be sustained. Mindful of the scope of this court's supervisory function,[8] we are convinced that the Commission took the requisite "hard look" and made its determination on the basis of the interstate tariff in accordance with its statutory obligations.
 
 
 20
 Accordingly, the Order of the Commission dismissing Diamond's complaint is
 
 
 21
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a)
 
 
 [1]
 New York Tel.'s Tariff PSC No. 800 filed with the New York Public Service Commission
 
 
 [2]
 Section 203 of the Communications Act, 47 U.S.C. § 203, requires carriers to file with the Commission, and keep open for public inspection, their tariff schedules for interstate communication service "showing the classifications, practices, and regulations affecting such charges." Carriers cannot "charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, between the points named in any such schedule than the charges specified in the schedule then in effect . . . ."
 Section 202(a) of the Communications Act, 47 U.S.C. § 202(a), prohibits carriers from making "any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services . . . ." involving interstate communication service.
 
 
 [3]
 5 U.S.C. § 706. Scope of review
 To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . .
 
 
 [4]
 As explained by AT&T, a PBX is communications equipment located on a customer's premises which, in effect, creates a local telephone exchange for use by a particular business customer and its employees. The employees at the PBX locations can communicate with one another by having their calls switched through the PBX. Typically, other communications lines are connected to the PBX so that the customer's employees may call to, and be called from other locations. These lines are part of the local exchange and long distance networks accessible by the public, but may also, as here, include private lines between particular locations dedicated to the use of the individual customer
 
 
 [5]
 Section 2.5 of AT&T Tariff FCC No. 260 provides that:
 The term "Station Terminal" as used in connection with Series 2000 channels Types 2001 through 2004, also includes, at the option of the customer, a standard telephone termination, connection to either a PBX or Key Equipment furnished by the Telephone Company when the Series 2000 channel is not arranged for dial signalling or termination on a connecting block.
 Section 3.2.2(c)(3) of AT&T Tariff FCC No. 260 provides that:
 For Series 2000 channels, Types 2001 through 2004, the station terminal charge includes at the option of the customer, the provision of a standard telephone termination or connection to either a PBX or to Key Equipment furnished by the Telephone Company which is not arranged for dial signalling.
 
 
 [6]
 Section 4.2.4 of AT&T Tariff FCC No. 260 explains that Interexchange Channel Switching Arrangements are provided to "(c)onnect two or more separate private lines so as to form through connections over the private lines where such switching arrangements and through connections are necessary to meet the customer's interstate communications requirements."
 
 
 [7]
 Diamond's claim that the additional PBX charges are unreasonably discriminatory, in violation of section 202(a) of the Act, also lacks merit. The allegation that additional PBX charges for the modifications involved here are imposed in some states, but not in others, does not gainsay anything for Diamond. As we have already concluded, the charges in question are properly subject to state regulation. The Act does not require that the charges be identical in each state. Rather, it is to be expected under the statutory scheme that there will be variations from state to state. See General Tel. Co. of Southwest v. Robinson, 132 F.Supp. 39 (E.D.Ark.1955). Had Diamond alleged some variation in the charges within New York, we would be presented with a different question
 
 
 [8]
 In Greater Boston Television Corp. v. FCC, 444 F.2d 841, 851 (D.C.Cir.1970), Judge Leventhal articulated the standard as follows:
 If satisfied that the agency has taken a hard look at the issues with the use of reasons and standards, the court will uphold its findings, though of less than ideal clarity, if the agency's path may reasonably be discerned, though of course the court must not be left to guess as to the agency's findings or reasons.
 (Citations omitted.)