637 F.2d 689
 Earl L. TAYLOR, Plaintiff/Appellant,
v.
Glenn HEARNE; F. Earl Corin, as Tax Collector of Placer
County; Frank R. Chilton as Assessor of Placer
County; Placer County, California; and
State of California,
Defendants/Appellees.
 No. 78-3501.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 15, 1980.
Decided Jan. 26, 1981.
 
 George Forman, Oakland, Cal., for plaintiff/appellant.
 Joan R. Dowis, Auburn, Cal., Derry L. Knight, Deputy Atty. Gen., Sacramento, Cal., for defendants/appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before WRIGHT, KENNEDY and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 This is an appeal from a judgment of dismissal under Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The question presented is whether former Indian land has retained its tax exempt status because of the Secretary of the Interior's failure to install sanitation and water facilities as required by the California Rancheria Act.
 
 FACTUAL BACKGROUND
 
 2
 The property that is the subject of this suit is located in what was once the Auburn Rancheria, a section of land formerly held in trust by the United States for the benefit of the Indians living there. Under the provisions of the California Rancheria Act, Pub.L.No.85-671, 72 Stat. 619 (1958), as amended Pub.L.No.88-419, 78 Stat. 390 (1964) (the "Act"), the United States conveyed title to these lands to the Indians. On March 30, 1961, appellant Earl Taylor received title to parcel 24, the property in question here, in a conveyance from the United States. Taylor recorded his deed on the following day.
 
 
 3
 Since 1961, Taylor has failed to pay property taxes assessed on parcel 24 by appellee Placer County, with the exception of those taxes assessed for the years 1970, 1971 and 1972. As a result, on July 30, 1965, Placer County "sold" the parcel, pursuant to California Revenue and Taxation Code § 3436, to the State of California for non-payment of property taxes.[1]
 
 
 4
 On August 18, 1967, the Secretary of the Interior published the "Notice of Termination of Federal Supervision over Property and Individual Members Thereof" with regard to the Auburn Rancheria. 32 Federal Register 11,964 (1967). On July 3, 1972, the Placer County tax collector deeded parcel 24 of the former Rancheria to the State in satisfaction of the same unpaid taxes. California Revenue and Taxation Code § 3511. On March 3, 1974, Taylor and his wife conveyed the parcel to third parties Arthur and Dorothy Marquet. A year later, the Marquets quitclaimed their interest in the parcel back to the Taylors.
 
 
 5
 On September 22, 1976, the parcel was sold to appellee Glenn Hearne at a tax collector's sale held pursuant to Revenue and Taxation Code § 3691. Sixteen days later, the tax collector deeded the property to Hearne. California Tax and Revenue Code § 3708.
 
 
 6
 On March 8, 1977, Taylor filed his complaint seeking to set aside the tax sale. On August 25, 1978, judgment was entered in the district court dismissing the action for failure to state a claim upon which relief can be granted.
 
 
 7
 On appeal, Taylor contends that the United States Government's failure to provide an adequate water system as required by the California Rancheria Act rendered invalid the 1961 distribution of parcel 24 to Taylor. Thus, Taylor argues, the property retained its tax exempt status as Indian country until the United States fulfilled its obligation to provide a water system, or in the alternative, until the Secretary published the notice of termination of the Rancheria's tax exempt status in the Federal Register in 1967. Because the parcel was exempt from taxes in 1965, Taylor argues it could not have been validly sold to the state. Therefore, he contends, the district court erred in dismissing his action to set aside the sale.
 
 
 8
 We do not agree. Because the district court correctly found that the parcel's tax exempt status terminated when Taylor received title to the property in 1961, we affirm the court's judgment dismissing the action.
 
 DISCUSSION
 1. Condition Precedent
 
 9
 Section 3 of the Act provides in pertinent part that:
 
 
 10
 Before making the conveyance authorized by this Act on any rancheria or reservation, the Secretary of the Interior is directed ... (t)o construct, improve, install, extend, or otherwise provide, by contract or otherwise, sanitation facilities (including domestic and community water supplies and facilities, drainage facilities and sewage- and waste-disposal facilities, together with necessary appurtenances and fixtures)....
 
 
 11
 It is not disputed that the Secretary failed to comply with this section before conveying parcel 24 to Taylor in 1961. Taylor argues that § 3 creates a condition precedent to a valid conveyance of title. We are told that noncompliance with such a condition would leave title in the United States, and therefore preserve the disputed parcel's tax exempt status.
 
 
 12
 We agree with the district court's conclusion that Congress could not have intended such a harsh result. Appellant's interpretation of the Act would mean that none of the Indians in the Rancheria obtained title in 1961. Thus, all subsequent conveyances by the Indians, as well as all subsequent tax sales, would be void.
 
 
 13
 Taylor argues, however, that the title conveyed to him by the government was unlawful because the distribution was not accomplished within the framework of the Act. He claims that distribution was not made "pursuant to," as "authorized by," or "in accordance with," or "as provided in" the Act, because the government did not fulfill its obligation before distributing the Rancheria parcels. Taylor further contended that "(b)y these words, Congress obviously intended to protect Indians by imposing standards and constraints upon the B.I.A.'s (Bureau of Indian Affairs') implementation of the Act." We view these words as providing the grant of authority necessary to make the conveyances contemplated in the Act, not as creating a condition precedent that would void conveyances made prematurely. For the reason stated above, we do not believe that such an interpretation would be beneficial to the Indians. Rather, we believe that Congress intended to protect the Indian distributees by providing a cause of action for the government's failure to comply with the Act.
 
 
 14
 Furthermore, were we to accept Taylor's argument that the government's failure to comply with § 3 invalidates the distribution, he would still not be entitled to the relief he seeks. Under Taylor's theory, title remains in the United States at this time. The fact that the United States entered into a consent judgment in Audrey Taylor, et al. v. Walter Hickel, et al., Civil No. 70-719 SAW (N.D.Cal. April 25, 1973), thereby agreeing to pay $92,000 for the construction of water facilities, would not operate to convey title to the Indians. Another conveyance, after completion of the alleged condition precedent, would have been necessary to pass title to the Indians. Therefore, under Taylor's theory of the case, title remains in the United States at this time.
 
 
 15
 Taylor seeks to avoid the force of the foregoing argument by suggesting that parcel 24 has retained its tax exempt status regardless of whether the 1961 transfer from the United States was void ab initio. Arguing that termination of federal benefits under the Act was to be a voluntary process, Taylor contends that the Indians wronged by the Secretary's failure to install a water system prior to distribution would be faced with the choice either: (a) to accept the 1961 distribution and seek money damages against the United States for the Secretary's breach of obligation, or (b) to refuse the distribution and thus preserve the former Rancheria property's tax exempt status.
 
 
 16
 Assuming we were to accept this theory, we would be forced to conclude that Taylor has chosen to accept the 1961 distribution. He recorded his title to parcel 24 one day after the government transferred it to him. Furthermore, he transferred his interest in the parcel to the Marquets in 1974, behavior that is inconsistent with any intention to reject the distribution. The parcel was not tax exempt in the hands of the Marquets, and did not become so when they quitclaimed it back to Taylor in 1975.
 
 
 17
 We next address Taylor's argument that the former Rancheria property did not lose its tax exempt status until the Secretary's publication of the Notice of Termination in 1967. Although the language of the Notice gives a surface plausibility to Taylor's contention, his argument is precluded by the plain meaning of the Act. Section 2(d) provides that "(f)ollowing any distribution of property made under the provisions of this Act, such property and any income derived therefrom by the distributee shall be subject to the same taxes, State and Federal, as in the case of non-Indians." 72 Stat. 619, § 2(d).
 
 
 18
 Even more persuasive is § 10(b) of the amended Act, which provides that:
 
 
 19
 After the assets of a rancheria ... have been distributed pursuant to this Act, the Indians who receive any part of such assets ... shall not be entitled to any of the services performed by the United States for Indians because of their status as Indians, all restrictions and tax exemptions applicable to trust or restricted land or interests therein owned by them are terminated .... The provisions of this subsection, as amended, shall apply in the case of a distribution of assets made either before or after the amendment of the subsection.
 
 
 20
 72 Stat. 619, § 10(b), as amended 78 Stat. 390 §§ (h)(2) & (3).
 
 
 21
 Taylor received title to parcel 24 on March 30, 1961. He recorded that title the next day. He paid property taxes on the parcel in 1971, 1972 and 1973. In 1974, he and his wife sold the parcel to the Marquets. His exercise of these incidents of ownership render unpersuasive any argument that he has not "receive(d) any part of such assets" within the meaning of the Act. Thus, the parcel has clearly lost its tax exempt status.
 
 
 22
 Finally, we disapprove of Taylor's citation to three unpublished district court opinions. Ninth Circuit Rule 21(c) states that "(a) disposition which is not for publication shall not be regarded as precedent and shall not be cited to ... this court." We therefore decline to consider Taylor's argument that these unpublished opinions support reversal of the judgment below.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Section 3436 provides for the "sale" of land to the state by operation of law if taxes, assessments, penalties or costs levied against the land have not been fully paid