The MONTANA POWER COMPANY
and Idaho Power Company,
Plaintiffs,

v.

James B. EDWARDS, Secretary of Energy, Ruth M. Davis, Assistant Secretary of Energy for Resource Applications, and Sterling Munro, Administrator for the Bonneville Power Administration, Defendants,

and

Public Power Council,
Intervenor-Defendant.

Civ. No. 80–842PA.

United States District Court,
D. Oregon.

May 18, 1981.

David P. Templeton, Martin, Bischoff, Templeton, Biggs & Ericsson, Portland, Or., for plaintiffs.

Sidney I. Lezak, U. S. Atty., Thomas C. Lee, Asst. U. S. Atty., Portland, Or., for Government defendants.

Norman Stoll, Alan S. Larsen, Stoll & Stoll, Portland, Or., for intervenor-defendant.

## OPINION AND ORDER*

PANNER, District Judge:

### OVERVIEW

Plaintiffs, Montana Power Company and Idaho Power Company, filed suit in the District of Montana against the Secretary of Energy, the Assistant Secretary of Energy for Resource Applications, and the Administrator of the Bonneville Power Administration (BPA). They request a declaration that the Secretary, through the Assistant Secretary, had no authority to approve BPA rate schedules on an interim basis; that they be allowed to receive power under the new "F–7" schedule without the "penalties" added on an interim basis; and that the rate order was promulgated in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–706.

The District Court for the District of Montana transferred the case to this district pursuant to 28 U.S.C. § 1404(a). I denied plaintiffs' retransfer motion and, because of plaintiffs' suggestion of urgency, I asked the parties to submit briefs on the differences, if any, between this case and a similar case I had just decided, *Pacific Power & Light Co. v. Duncan*, 499 F.Supp. 672 (D.Or.1980) (*PP&L*), appeal dismissed, No. 80–3517 (9th Cir., Feb. 13, 1981).[1]

After considering the briefs, stipulated facts,[2] exhibits, counsels' argument at the abbreviated trial, and subsequent case law, I grant judgment to defendants.

### ISSUES

1. Does the Secretary of Energy have the power and authority to approve BPA rates on an interim basis?

2. Do the new interim rates constitute a breach of contract?

3. Did the defendants, in promulgating the new rate schedules, violate the APA?

### ANALYSIS

A. *Jurisdiction and Scope of Review*

Jurisdiction exists under 28 U.S.C. §§ 1331(a), 1361 and 42 U.S.C. § 7192. *See* 5 U.S.C. §§ 701, 702; 42 U.S.C. § 7191; *Rowe v. U.S.*, 633 F.2d 799, 801–02 (9th Cir. 1980); *PP&L*, at 674–75.

Because plaintiffs challenge an energy regulatory agency's actions, I am limited to an extremely narrow scope of review. *PP&L*, at 675–76. I can consider whether the agency acted within the scope of its authority; whether the agency acted in an arbitrary or capricious fashion; and whether the agency followed appropriate procedures. *PP&L*, at 676. *Cf. East Tennessee National Gas Co. v. FERC*, 631 F.2d 794, 798 (D.C.Cir.1980) (review under Natural Gas Act limited to whether substantial evidence supports the agency's decision); *Gas & Electric Department of the City of Holyoke, Massachusetts v. FERC*, 629 F.2d 197, 202–03 (1st Cir. 1980) (agency's interpretation of license subject to "clearly erroneous" standard); *Indiana Municipal Electric Assoc.' v. FERC*, 629 F.2d 480, 485–86 (7th Cir. 1980) (agency's use of future projections does not result in "unjust and unreasonable" rate); *Public Utility Dist. No. 1 of Franklin Coun-*

---

* *Appeal dismissed*, No. 81–3505 (9th Cir., Oct. 21, 1981).

1. Plaintiffs suggested throughout the proceedings that their due process rights were violated by the transfer of this case, the expedited schedule, and the request to submit briefs on the differences between this case and *PP&L*. Although a good· portion of their briefs and memoranda address this issue, no authority is cited in support. Their assertion that transfer to this district in the interests of consistency is improper borders on the absurd. The request for briefing on the differences between this case and *PP&L*, if any, can hardly be considered a due process violation. Plaintiffs have

been given every opportunity to brief this case and submit any relevant material. The parties cite unpublished opinions. I may not consider them. Rule 21(c) of the Rules of the U.S. Court of Appeals for the 9th Circuit; *Taylor v. Hearne*, 637 F.2d 689, 692 (9th Cir. 1981).

2. Plaintiffs objected to the relevancy of stipulated facts numbers 28–31 and 35–42. Those stipulated facts are relevant only to the APA procedural allegations contained in the complaint. Plaintiffs did not address this issue in their briefs or memoranda to this court, nor did counsel address it at the trial.

ty v. *Big Bend Electrical Coop.*, 618 F.2d 601, 603 (9th Cir. 1980) (agency's determination will be upheld unless arbitrary and capricious).

### B. *Discussion*

#### 1. Interim Approval.

■ Unlike *PP&L*, plaintiffs here do not concede that the authority to promulgate interim rates can, in certain circumstances, be inferred. The concession in *PP&L* was unnecessary to the decision that the Secretary of Energy did indeed have such authority. *PP&L*, at 677–79.

Plaintiffs are correct in their contention that the statutes involved in BPA ratemaking do not grant the same broad powers that the Federal Power Commission (FPC) had under the Federal Power Act and Natural Gas Act. Nonetheless, powers not explicitly granted can be inferred, despite some legislative history which suggests the contrary. *See U.S. v. Exxon*, 628 F.2d 70, 74–76 (D.C.Cir.1980), *cert. denied*, 446 U.S. 964, 100 S.Ct. 2940, 64 L.Ed.2d 823 (1980). *Cf. Atlantic Richfield Co. v. U.S.D.O.E.*, 500 F.Supp. 1301, 1305–09 (E.D.Pa.1980) (finds implied powers for DOE under EPAA). In fact, the legislative history cited by plaintiffs suggests that Congress intended the FPC to have *no* power to *modify* the rates proposed by the BPA Administrator. That history does not suggest that Congress intended to curb the FPC's authority to grant interim approval of rates. *See Exxon*, 628 F.2d at 74.

The FPC granted interim approval to rates a number of times. I find that the FPC had the power to confirm BPA rates on an interim basis. The Secretary inherited this power through the Department of Energy Organization Act (DOEOA). 42 U.S.C. §§ 7151(b), 7152(a)(1)(D–E), 7152(a)(2–3). The fact that Congress also granted more explicit powers under the Federal Power Act and Natural Gas Act does not detract from the analysis. *See Exxon*, 628 F.2d at 74; *PP&L*, at 678.[3]

#### 2. Breach of Contract.

■ Plaintiffs here argue that the rate changes approved on an interim basis constitute a breach of their power contracts with BPA.[4] In particular, they rely on General Rate Schedule Provision 8.1, incorporated into their contracts by section 2 of Amendatory Agreement No. 4:

8.1 *Approval of Rates*: Schedule of rates and charges, or modifications thereof, for electric energy sold by the Administrator shall become effective only after confirmation and approval by the Federal Power Commission.

That General Rate Schedule Provision has been changed to reflect the changeover from the FPC to the Secretary, so that it now reads:

8.1 *Approval of Rates*: Schedules of rates and charges, or modifications thereof, for electric energy sold by Bonneville shall become effective only after confirmation and approval by the entity or entities designated to confirm and approve such rates and charges by the Secretary of Energy.

The parties have stipulated that no provision of the contracts addresses interim rates. In the absence of such a provision, I can find no breach of the contract. As explained in the previous section, the FPC had the power to authorize rates on an interim basis, and that power passed on to the Secretary. Neither the old or new General Rate Schedule Provision 8.1 bars interim approval.

---

**3.** The parties addressed the relevance of the new Northwest Power Act, Pacific Northwest Electric Power Planning and Conservation Act, Pub.L.No. 96–501, 94 Stat. 2697 (December 5, 1980). I have considered their arguments, but do not find this Act relevant.

**4.** Plaintiffs can raise this contract issue only in the context of reviewing agency action. *PP&L*, at 676–77. *See Rowe v. U.S.*, 633 F.2d 799, 801–02 (9th Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981). This is to be distinguished from those cases reviewing utility rate increases under the *Sierra-Mobile* doctrine. *See FPC v. Sierra Pacific Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956); *United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); and progeny.

■ Although the plaintiffs contend that the new "F–7" rates amount to "penalties," I find no support for that position on this record. The fact that plaintiffs will have to spend more money for the power they receive under the contracts is hardly a "penalty". The contracts contemplate rate increases, and no provision addresses maximum rates. *Cf. PP&L,* at 681–83 (rate design can't be reviewed because there is "no law to apply"). *But cf. Public Service Co. of New Mexico v. FERC,* 628 F.2d 1267, 1270 (10th Cir. 1980) *cert. denied* (FERC should consider whether record demonstrates that new rate schedule is so high that it constitutes a "price squeeze," citing *FPC v. Conway Corp.,* 426 U.S. 271, 96 S.Ct. 1999, 48 L.Ed.2d 626 (1976)); *Papago Tribal Utility Authority v. FERC,* 628 F.2d 235, 244 (D.C.Cir.1980) *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980) (utility cannot file revised rate schedule in contravention of contract obligations).

3. Procedural Violations.

Although plaintiffs' complaint alleges procedural violations of the APA, they have not developed this contention. As I found in *PP&L,* the defendants followed the appropriate procedures in promulgating the BPA rates and approving them on an interim basis. *PP&L,* at 679–81. *See Atlantic Richfield Co. v. U.S.D.O.E.,* 500 F.Supp. 1301, 1309–12 (E.D.Pa.1980) (DOE followed appropriate APA, FEAA, and DOEOA procedures, and didn't need new notice each time a new suggestion was incorporated into the rulemaking). *But see Western Oil & Gas v. U.S.E.P.A.,* 633 F.2d 803, 810–12 (9th Cir. 1980) (EPA violated APA because there was no "good cause" to fail to publish notice).

**5.** Although plaintiffs did not directly challenge the rate design, they impliedly did so when asserting a breach of contract. I note that the particular rates challenged here are not susceptible to judicial review because there is no law to apply. *PP&L,* at 681–683. *Compare East Tennessee National Gas Co. v. FERC,* 631 F.2d 794, 801–02 (D.C.Cir.1980) (substantial evidence supported method of calculation of credits chosen by FERC); *Indiana Municipal Electric Association v. FERC,* 629 F.2d 480 (7th Cir. 1980) (FERC's use of company's projections of

CONCLUSION

Plaintiffs cannot prevail. The Secretary of Energy has the power and authority to authorize interim rates. He properly delegated this authority to the Assistant Secretary for Resource Applications, who then properly exercised it to approve the rates proposed by the Administrator of the BPA. These new rates do not constitute a breach of plaintiffs' contracts. I can find no procedural or substantive[5] infirmity.

IT IS HEREBY ORDERED that:

1. This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a);

2. The Clerk is directed to enter judgment for defendants pursuant to Fed.R. Civ.P. 58.

future revenues and costs does not result in an "unjust or unreasonable" rate); *and Papago Tribal Utility Authority v. FERC,* 628 F.2d 235, 240–41 & n.14 (D.C.Cir.1980) cert. denied, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980) (under standards for preliminary injunction, there was no immediate irreparable injury because of the provisions for rate refunds); *with Connecticut Light & Power v. FERC,* 627 F.2d 467, 472–73 (D.C.Cir.1980) (remanded because FERC needed to state its reasons for different suspension lengths).