# FEDERAL POWER COMMISSION *v.* CONWAY CORP. ET AL.

No. 75–342.   Argued April 21, 1976—Decided June 7, 1976

WHITE, J., delivered the opinion for a unanimous Court.

*Allan Abbot Tuttle* argued the cause for petitioner. With him on the briefs were *Drexel D. Journey* and *Robert W. Perdue.*

*Robert C. McDiarmid* argued the cause for respondents Conway Corp. et al. With him on the brief was *Sandra J. Strebel. Harry A. Poth, Jr.,* and *Robert T. Hall III* filed briefs for Arkansas Power & Light Co. as respondent under this Court's Rule 21 (4).*

MR. JUSTICE WHITE delivered the opinion of the Court.

The question in this case is this: When a power company that sells electricity at both wholesale and retail seeks to raise its wholesale rates, does the Federal Power Commission (Commission) have jurisdiction to consider the allegations of the company's wholesale customers

---

*Briefs of *amici curiae* urging affirmance were filed by *Northcutt Ely* and *Frederick H. Ritts* for the American Public Power Assn.; and by *Charles F. Wheatley, Jr.,* and *Grace Powers Monaco* for the City of Batavia, Ill., et al.

that the proposed wholesale rates, which are within the Commission's jurisdiction, are discriminatory and noncompetitive when considered in relation to the company's retail rates, which are not within the jurisdiction of the Commission? We hold that it does.

## I

Arkansas Power & Light Co. (Company) is a public utility engaged in the sale of electric energy at wholesale in interstate commerce under the meaning of § 201 of the Federal Power Act (Act), as added, 49 Stat. 847, 16 U. S. C. § 824. Its wholesale rates are thus within reach of the Commission's powers under § 206 (a) of the Act to establish rates which are just, reasonable, and nondiscriminatory. 16 U. S. C. § 824e (a).[1] The Company also sells at retail and seeks industrial sales in competition with some of its wholesale customers. These wholesale customers include the seven municipally owned

---

[1] Section 206 (a) provides:

"Whenever the Commission, after a hearing had upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order." 49 Stat. 852, 16 U. S. C. § 824e (a).

Section 205 (b) forbids rates that are preferential or discriminatory:

"No public utility shall, with respect to any transmission or sale subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service." 49 Stat. 851, 16 U. S. C. § 824d (b).

electric systems and the two electric power cooperatives which are respondents here.[2]  Each of these respondents (Customers) operates in the State of Arkansas and each borders on or is surrounded by the territory served by the Company.

In June 1973, the Company filed with the Commission a wholesale rate increase pursuant to § 205 (d).[3]  The Customers sought to intervene before the Commission, urging that the rate increase be rejected.  Among other grounds, it was asserted that the Customers and the Company were in competition for industrial retail accounts and that the rate increase was "an attempt to squeeze [the Customers] or some of them out of competition and to make them more susceptible to the persistent attempts of the company to take over the public[ly] owned systems in the State."  App. 6.  It was alleged that the proposed wholesale rates would make it "impossible for the [Customers] to sell power to an industrial load of any size at a competitive price with [the

---

[2] The respondent customers are Conway Corp. (Conway, Ark.); Benton Municipal Light & Water Works; Hope Water & Light Commission; city of North Little Rock; city of Osceola; city of Prescott; city of West Memphis; Farmers Electric Cooperative Corp.; and Mississippi County Electric Cooperative, Inc.

[3] Section 205 (d) provides:

"Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect.  The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published."  49 Stat. 851, 16 U. S. C. § 824d (d).

Company], since, in many cases, the revenues therefrom would not even cover the incremental power costs to [the Customers]." *Id.*, at 7. It was also asserted that the rate filing was "plainly discriminatory against the single class of customer which [the Company] has historically attempted to drive out of business, without justification on any ordinary cost of service basis . . . ." *Id.*, at 19.

The Company opposed the petition. The Commission permitted the Customers to intervene but ruled that it would "limit Customers' participation in this proceeding to matters other than the alleged anti-competitive activities" because the Customers had failed to demonstrate that the relief sought was "within this Commission's authority to direct." *Id.*, at 35. The Commission also denied the Customers' amended petition to intervene, again refusing to consider the tendered anticompetitive and discrimination issues. Inasmuch as the Commission's authority is limited to wholesale rates and does not reach sales at retail, the Commission's opinion was that "the relief sought by [the Customers] is beyond the authority granted to us under the Federal Power Act." *Id.*, at 53. In later denying the Customers' petition for rehearing, the Commission stated that in considering the Company's cost base for its proposed wholesale rates, it would of course put aside those costs properly allocable to the Company's retail business; but it again ruled that the anticompetitive issue presented by the Customers was "beyond the scope of this Commission's jurisdiction, contrary to the purposes of the Federal Power Act and inappropriate in this proceeding, the purpose of which is to review the justness and reasonableness of the [Company's] proposed wholesale rates." *Id.*, at 55.

The Customers sought review of the Commission's action in the Court of Appeals for the District of Columbia Circuit. The Court of Appeals, disagreeing with the Commission's view as to the reach of its powers, held

that the Commission's jurisdiction over wholesale rates for electricity sold in interstate commerce furnished the necessary authority to consider the alleged discriminatory and anticompetitive effects of the requested increase. The Company's retail rates, the court held, "in a market in which it is competing with its own customers are part of the factual context in which the proposed wholesale rate will function . . ." and should be considered in determining whether or not the rate increase was just and reasonable. 167 U. S. App. D. C. 43, 52, 510 F. 2d 1264, 1273 (1975). The case was therefore remanded to the Commission for further proceedings.

We granted the Commission's petition for certiorari to consider the question whether the Court of Appeals had correctly construed the statutes controlling the Commission's jurisdiction. 423 U. S. 945 (1975). We now affirm the judgment of the Court of Appeals.

## II

Section 201 (b) of the Act, 16 U. S. C. § 824 (b), confers jurisdiction on the Commission with respect to the sale of electric energy at wholesale in interstate commerce.[4] The prohibition against discriminatory or preferential rates or services imposed by § 205 (b) and the Commission's power to set just and reasonable rates under § 206 (a) are accordingly limited to sales "subject to the jurisdiction of the Commission," that is, to sales of electric energy at wholesale. The Commission has no power to prescribe the rates for retail sales of power companies. Nor, accordingly, would it have power to remedy

---

[4] Section 201 (b) provides in relevant part:

"The provisions of this Part shall apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce, but shall not apply to any other sale of electric energy or deprive a State or State commission of its lawful authority now exercised over the exportation of hydroelectric energy which is transmitted across a State line."

an alleged discriminatory or anticompetitive relationship between wholesale and retail rates by ordering the company to increase its retail rates.

As the Commission is at great pains to establish, this is the proper construction of the Act, the legislative history of § 205 indicating that the section was expressly limited to jurisdictional sales to foreclose the possibility that the Commission would seek to correct an alleged discriminatory relationship between wholesale and retail rates by raising or otherwise regulating the nonjurisdictional, retail price.[5] Insofar as we are advised, no party to this case contends otherwise.

Building on this history, the Commission makes a skillful argument that it may neither consider nor remedy *any* alleged discrimination resting on a difference between jurisdictional and nonjurisdictional rates. But the argument, in the end, is untenable. Section 205 (b) forbids the maintenance of any "unreasonable difference in rates" or service "with respect to any . . . sale subject to the jurisdiction of the Commission." A jurisdictional sale is necessarily implicated in any charge that the difference between wholesale and retail rates is unreasonable or anticompetitive. If the undue preference or discrimination is in any way traceable to the level of the jurisdictional rate, it is plain enough that the section would to that extent apply; and to that extent the Commission would have power to effect a remedy under § 206 by an appropriate order directed to the jurisdictional rate. This was the view of the Court of Appeals, and we agree with it.

The Commission appears to insist that a just and rea-

---

[5] Under the Act to Regulate Commerce of 1887, it was held that the Interstate Commerce Commission was empowered to order that a nonjurisdictional, intrastate freight rate be raised to eliminate a discrimination. *Houston & Texas R. Co.* v. *United States,* 234 U. S. 342, 356–359 (1914).

sonable wholesale rate can never be a contributing factor to an undue discrimination: Once the jurisdictional rate is determined to be just and reasonable, inquiry into discrimination is irrelevant for § 206 (a) purposes, for if the discrimination continues to exist, it is traceable wholly to the nonjurisdictional, retail rate. This argument assumes, however, that ratemaking is an exact science and that there is only one level at which a wholesale rate can be said to be just and reasonable and that any attempt to remedy a discrimination by lowering the jurisdictional rate would always result in an unjustly low rate that would fail to recover fully allocated wholesale costs. As the Court of Appeals pointed out and as this Court has held, however, there is no single cost-recovering rate, but a zone of reasonableness: "Statutory reasonableness is an abstract quality represented by an area rather than a pinpoint. It allows a substantial spread between what is unreasonable because too low and what is unreasonable because too high." *Montana-Dakota Util. Co.* v. *Northwestern Pub. Serv. Co.,* 341 U. S. 246, 251 (1951). The Commission itself explained the matter in *In re Otter Tail Power Co.,* 2 F. P. C. 134, 149 (1940):

> "It occurs to us that one rate in its relation to another rate may be discriminatory, although each rate *per se,* if considered independently, might fall within the zone of reasonableness. There is considerable latitude within the zone of reasonableness insofar as the level of a particular rate is concerned. The relationship of rates within such a zone, however, may result in an undue advantage in favor of one rate and be discriminatory insofar as another rate is concerned. When such a situation exists, the discrimination found to exist must be removed."

The Commission thus cannot so easily satisfy its obligation to eliminate unreasonable discriminations or put aside its duty to consider whether a proposed rate will

have anticompetitive effects. The exercise by the Commission of powers otherwise within its jurisdiction "clearly carries with it the responsibility to consider, in appropriate circumstances, the anticompetitive effects of regulated aspects of interstate utility operations pursuant to . . . directives contained in §§ 205, 206 . . . ." *Gulf States Util. Co. v. FPC*, 411 U. S. 747, 758–759 (1973). The Commission must arrive at a rate level deemed by it to be just and reasonable, but in doing so it must consider the tendered allegations that the proposed rates are discriminatory and anticompetitive in effect.

We think the Court of Appeals was quite correct in concluding:

> "When costs are fully allocated, both the retail rate and the proposed wholesale rate may fall within a zone of reasonableness, yet create a price squeeze between themselves. There would, at the very least, be latitude in the FPC to put wholesale rates in the lower range of the zone of reasonableness, without concern that overall results would be impaired, in view of the utility's own decision to depress certain retail revenues in order to curb the retail competition of its wholesale customers." 167 U. S. App. D. C., at 53, 510 F. 2d, at 1274. (Footnote omitted.)

Because the Commission had raised a jurisdictional barrier and refused to consider or hear evidence concerning the Customers' allegations, the Court of Appeals could not determine whether a wholesale rate, if set low enough partially or wholly to abolish any discriminatory effects found to exist, would fail to recover wholesale costs. The case was therefore remanded to the Commission for further proceedings.

We agree with this disposition. It does not invade a nonjurisdictional area. The remedy, if any, would operate only against the rate for jurisdictional sales. Whether

that rate would be affected at all would involve, as the Court of Appeals indicated, an examination of the entire "factual context in which the proposed wholesale rate will function." *Id.*, at 52, 510 F. 2d, at 1273. These facts will naturally include those related to nonjurisdictional transactions, but consideration of such facts would appear to be an everyday affair. As the Commission concedes, in determining whether the proposed wholesale rates are just and reasonable, it would in any event be necessary to determine which of the Company's costs are allocable to its nonjurisdictional, retail sales and which to its jurisdictional, wholesale sales—this in order to insure that the wholesale rate is paying its way, but no more. In this sense, consideration of the relationship between jurisdictional and nonjurisdictional rate structures is commonplace, and is nothing more than is required by *Colorado Interstate Co. v. FPC*, 324 U. S. 581 (1945),[6] and by *Panhandle Co. v. FPC*, 324 U. S. 635 (1945).[7]

---

[6] "The function which an allocation of costs (including return) is designed to perform in a rate case of this character is clear. The amount of gross revenue from each class of business is known. Some of those revenues are derived from sales at rates which the Commission has no power to fix. The other part of the gross revenues comes from the interstate wholesale rates which are under the Commission's jurisdiction. The problem is to allocate to each class of the business its fair share of the costs. It is of course immaterial that the revenues from the intrastate sales or the direct industrial sales may exceed their costs, since the authority to regulate those phases of the business is lacking. To the extent, however, that the revenues from the interstate wholesale business exceed the costs allocable to that phase of the business, the interstate wholesale rates are excessive." 324 U. S., at 588.

[7] "We agree that the Commission must make a separation of the regulated and unregulated business when it fixes the interstate wholesale rates of a company whose activities embrace both. Otherwise the profits or losses, as the case may be, of the unregulated business would be assigned to the regulated business and the Com-

Furthermore, § 206 (a) provides that whenever the Commission finds that

> "any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, *or that any rule, regulation, practice, or contract affecting such rate, charge, or classification* is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order." (Emphasis added.)

The rules, practices, or contracts "affecting" the jurisdictional rate are not themselves limited to the jurisdictional context. In the *Panhandle* case, *supra*, decided under the almost identical provision of the Natural Gas Act, 15 U. S. C. § 717d (a), the Court emphasized the same aspect of the section, and went on to hold that because it was "clear" that a gas company's "contracts covering direct industrial sales" are contracts "affecting" jurisdictional rates,

> "[t]he Commission, while it lacks authority to fix rates for direct industrial sales, may take those rates into consideration when it fixes the rates for inter-

mission would transgress the jurisdictional lines which Congress wrote into the Act. The Commission recognizes this necessity. As it stated in *Re Cities Service Gas Co.*, 50 P. U. R. (N. S.) 65, 89: 'The company's facilities and operations are devoted in part to natural gas service which is not subject to our jurisdiction. This service consists principally of gas sales made directly to large industrial consumers. The necessity arises, therefore, for making an allocation of costs as between the jurisdictional and non-jurisdictional sales.' The question is whether a formal allocation was necessary under the exceptional circumstances of this case." 324 U. S., at 641–642. (Footnote omitted.)

state wholesale sales which are subject to its juris-
diction." 324 U. S., at 646.[8]

The Court of Appeals' construction of the Act is sound
and its judgment is affirmed.

*So ordered.*

---

[8] For the proposition that there is no room within the Act to
consider any discriminatory or anticompetitive relationship between
a jurisdictional and a nonjurisdictional rate, the Commission relies
upon the statement in the concurring opinion of Mr. Justice Jackson
in *Colorado Interstate Co.* v. *FPC,* 324 U. S., at 615: "It is true
that the Natural Gas Act forbids discrimination only as between
regulated rates and does not forbid discriminations between the
regulated and unregulated ones." But the Justice went on to make
clear that a nonjurisdictional price could be used in determining
what is the "just and reasonable" jurisdictional rate. "By use of
the unregulated price as a basis for comparison I think a reduction
in the wholesale rates for resale to the public is in order. If this
makes low price industrial business less desirable, it will be in the
long-range public interest for reasons more fully stated by me in
[*FPC* v. *Hope Gas Co.,* 320 U. S. 591 (1944)]." *Ibid.*