**CITY OF WINNFIELD, LOUISIANA,**
**Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Louisiana Power & Light Company,**
**Intervenor.**

**No. 82–1224.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 19, 1983.
Decided Oct. 2, 1984.

Wallace Brand, Washington, D.C., with whom Sean T. Beeny was on the brief for petitioner.

Joseph S. Davies, Jr., Attorney, F.E.R.C., Washington, D.C., with whom Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., was on the brief for respondent.

James K. Mitchell, Washington, D.C., with whom Richard M. Merriman, Lisa H. Powell, Washington, D.C., and Andrew P. Carter, New Orleans, La., were on the brief for intervenor.

Before WRIGHT and SCALIA, Circuit Judges, and WEIGEL,[*] Senior District Judge for the Northern District of California.

SCALIA, Circuit Judge:

This appeal involves the Federal Energy Regulatory Commission's authorization of an increased rate under the Federal Power Act. We are of the view that the procedures used by the Commission were proper, and that the decision of the Administrative Law Judge, as adopted by the Commission, correctly stated the law applicable to the facts. With one exception, the issues resolved do not occasion an opinion. *See* D.C.Cir. Rule 13(c). We publish our conclusions regarding whether it was proper for the Commission to authorize not only a lower rate than that sought by the utility, but a different *type* of rate than that proposed by the utility.

## I

Winnfield, a city in Louisiana with a population of approximately 7,000, had purchased power from Louisiana Power & Light Company ("LP&L") under a series of contracts containing rates based on LP & L's average system fuel costs. When the last of these expired on May 14, 1981, LP & L tendered a proposed agreement with rates based on incremental fuel costs, which meant that, for any hour Winnfield

took power from LP&L, the rate would be based on the highest cost LP&L incurred during that hour for power going to its total load. When Winnfield refused to sign, LP&L filed a copy of the unexecuted agreement with the Commission as its proposal for continued service. On July 10, 1981, the Commission accepted the new rates for filing and suspended their effectiveness, subject to refund, until December 12, 1981, as the Commission is authorized to do under § 205 of the Federal Power Act, 16 U.S.C. § 824d (1982). It ordered that the prior rates and contract terms become part of LP & L's filed rate schedule and remain in effect until superseded by a rate schedule allowed to take effect. *Louisiana Power & Light Co.*, 16 F.E.R.C. (CCH) ¶ 61,019 (1981).

After considerable procedural wrangling, including a petition for review to the United States Court of Appeals for the Fifth Circuit, the parties submitted prepared direct testimony on September 4, 1981. LP&L asserted the superiority of its incremental pricing system over the prior average cost rates. The City of Winnfield contended that the proposed rates lacked the requisite justification on various grounds, and sought continued service under an average cost rate. The Commission staff agreed with Winnfield; it recommended that the average cost rates be continued, and that LP&L be allowed a rate increase which would provide a 16.5% return on common equity. Rebuttal testimony was taken, an extensive hearing was held, and post-hearing briefs were filed with the ALJ. In its brief, LP&L indicated that should the Commission reject its proposed incremental cost rate schedule, the utility would accept the FERC staff proposal for increased average cost rates, and suggested modifications of its own.

On November 2, 1981, the ALJ issued an order which rejected LP&L's proposed incremental rates as unjust and unreasonable, yet granted LP&L the increase in average cost rates the Commission staff had proposed, based on the staff's cost-of-

[*] Sitting by designation pursuant to Title 28 U.S.C. § 294(d) (1982).

service and rate-of-return studies. *Louisiana Power & Light Co.*, 17 F.E.R.C. (CCH) ¶ 63,020 (1981) (Initial Decision). On December 11, 1981, FERC adopted this initial decision, with certain modifications not relevant here, *Louisiana Power & Light Co.*, 17 F.E.R.C. (CCH) ¶ 61,230 (1981), over the dissent of Commissioner Sheldon, who thought the rate increase was "gratuitous," one "for which [LP&L] did not apply nor [*sic*] justify." *Id.* at p. 61,443–44. The Commission later denied rehearing, again over the dissent of Commissioner Sheldon. *Louisiana Power & Light Co.*, 18 F.E.R.C. (CCH) ¶ 61,202 (1982). Winnfield brought a timely petition for review in this court under 16 U.S.C. § 825*l* (1982).

## II

After finding the incremental cost rates LP & L proposed to be unjust and unreasonable, the ALJ found the authority to impose higher average cost rates in the combination of §§ 205(e) and 206(a). She stated:

> Under Sections 205(e) and 206(a) of the Act, once the Commission finds the proposed rate unjust, unreasonable, or unduly discriminatory, it shall determine the just, reasonable and lawful rate.

Initial Decision, *supra*, at p. 65,047. The Commission affirmed without explaining whether it had acted under § 205 or § 206.

In this appeal, Winnfield claims that before setting a just and reasonable rate under § 206(a), the Commission must find the existing rate unjust or unreasonable, which it asserts was not done here; and that the Commission cannot approve under § 205 a rate increase of a sort different from that requested. Brief of Petitioner at 47–53. LP & L claims that the Commission need not find the existing rate unlawful in order to set a just and reasonable rate under § 206, but may do so when it finds that a utility's proposed rate under § 205 is unlawful. Brief of Intervenor LP&L at 21–26. The Commission agrees with Winnfield's construction of § 206, but claims that its action was based upon and authorized under § 205. As the Commission sees the law:

> If, on its own initiative or pursuant to a complaint, the Commission proceeds to determine whether a current rate is "unjust, unreasonable or unduly discriminatory or preferential," as specified under Section 206(a), 16 U.S.C. § 824e(a), it must make such a determination as to the existing rate before setting a new rate. However, where as here, the Commission proceeds to establish a rate pursuant to a change proposed by the company, Section 205 controls; and a finding that the current rate is unreasonable is not a prerequisite to the Commission's setting a new rate.

Brief of Respondent at 22–23.

■ Section 205 allows utilities to charge new rates by filing them with the Commission. They take effect after a statutorily required notice period, § 205(d), 16 U.S.C. § 824d(d) (1982), unless the Commission suspends them (for up to five months), § 205(e), in order to investigate their lawfulness. Section 205(e) provides:

> Whenever any such new schedule is filed the Commission ... may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective.... At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the public utility, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible.

16 U.S.C. § 824d(e) (1982). As is evident, § 205, unlike § 206, allows the Commission

to approve rate increases without a showing that current rates are unjust and unreasonable; it need only find the *proposed* rates to be just and reasonable.

Petitioner, repeating the position taken in dissent by Commissioner Sheldon, contends that when acting under § 205 the Commission must act within the confines of the utility's proposals; that it may not allow the utility a rate increase of a sort it neither requested nor justified. Nothing in the text of § 205 requires this result. To the contrary, by specifying that "the Commission may make such orders with reference [to a newly filed rate, charge, classification, or service] as would be proper in a proceeding initiated after it had become effective," the section appears to envision the same breadth of authority as is available under § 206. The case law, however, suggests a limitation that is apparent from the structure of the Act rather than from the terms of its individual sections. In *Public Service Commission of New York v. FERC*, 642 F.2d 1335 (D.C.Cir.1980), we analyzed the provisions of the Natural Gas Act which, in relevant part, are identical in form to §§ 205 and 206, and have been treated by the courts as identical in substance. *Compare* 15 U.S.C. §§ 717c(e) & 717d(a) (1982) (natural gas) *with* 16 U.S.C. §§ 824d(e) & 824e(a) (1982) (electric power); *see FPC v. Sierra Pacific Power Co.*, 350 U.S. 348, 350–51, 76 S.Ct. 368, 369–70, 100 L.Ed. 388 (1956); *Kansas Cities v. FERC*, 723 F.2d 82, 91 (D.C.Cir.1983). We noted that

> Section 4(e) [analogous to § 205(e) ] ... cannot be used by the Commission to institute any change in a rate-making component, such as cost allocation, that does not represent *at least partial approval of the change for which the enterprise had petitioned in its filing.* If the Commission seeks to make such changes, it has no alternative save compliance with the strictures of section 5(a) [analogous to § 206(a) ].

*Public Service Commission of New York v. FERC, supra,* 642 F.2d at 1345 (emphasis added).

While affirming the principle of that case, we think it has no proper application here. It is apparent from reading *Public Service* and the cases upon which it relies, *e.g., Southern Natural Gas Co. v. FPC,* 547 F.2d 826 (5th Cir.1977), that the principle applies to an attempt by the agency to impose under § 205 a sort of rate which *the utility* (as opposed to one of its customers) does not desire. For in that circumstance the agency is effectively using § 205, which is intended for the benefit of the utility—*i.e.,* as a means of enabling it to increase its rates within what has been called the "zone of reasonableness," *see FPC v. Conway Corp.,* 426 U.S. 271, 278–79, 96 S.Ct. 1999, 2004, 48 L.Ed.2d 626 (1976)—for the quite different purpose of *depriving the utility* of the statutory protection contained in § 206, that its existing rates be found to be entirely outside the zone of reasonableness before the agency can dictate their level or form. As *Public Service* said in discussing earlier cases upon which it relied:

> The courts were concerned lest the Commission impose its own curtailment plans without following the formalities prescribed by section 5(a) [the correlative of § 206]. To prevent section 5(a) from being undermined, reviewing courts approved curtailment plans filed under section 4 [the correlative of § 205] only if they were the product of the company's own decision. When reviewing courts found that the plans had in fact been dictated by the Commission and that section 5(a) procedures had not been followed, they did not hesitate to vacate those plans.

642 F.2d at 1344. The structure of the Act, however, is not "undermined" or even threatened when, in a § 205 proceeding, the Commission declines to permit a new form of rate calculation but grants a rate increase under the form the utility had previously been using, which increase *the utility accepts.* If the Commission proposal accepted by the utility involved the Commission's own original notion of a new form of rate—if, for example, what LP&L proposed in the present case and what the

Commission adopted were precisely reversed—then at least it might be argued that the power to initiate change through such rejection-plus-proposal removes the Commission from an essentially passive and reactive role envisioned by § 205 and places it in a more active role of the sort it occupies under § 206. But even that issue is not presented here. We conclude that the structural elements of the Act designed to protect the utility are not affected, and the rationale of *Public Service* therefore does not apply, when the Commission prescribes under § 205 a system of rates similar to that previously in effect, and the utility acquiesces.

There is, however, another valid concern: While the rule announced in *Public Service* was designed to protect the utility, it also serves to protect utility customers, by assuring early notice—in the rate proposal itself—of the sort of rate increase that is sought. Strictly speaking, however, that concern relates not to the power of the Commission to prescribe rates under § 205 but to the procedures that it must employ in doing so. We think fair procedures can be insured within the language of § 205, instead of achieving that goal indirectly by creating out of nothing a prophylactic limitation upon the Commission's powers. Specifically, § 205 authorizes the Commission to "make ... orders" only "after full hearings," and that requirement unquestionably imposes the duty to give adequate notice of the subject to which the orders pertain. *Cf. Portland Cement Association v. Ruckelshaus*, 486 F.2d 375 (D.C.Cir.1973) (requirement that public comment be received before issuing a rule, 5 U.S.C. § 553(c) (1982), imposes duty to disclose critical data underlying the proposed rule). We need not decide whether in some situations—for example, when the order imposes an entirely new rate scheme—this requirement can only be met if the utility's initial filing itself sets forth the basic scheme ultimately adopted. In the present case, however, where the order

adhered to a preexisting scheme,[1] we think that during the course of the proceeding adequate notice was provided. The Commission's suspension order setting the matter for hearing provided that "[t]he hearing ... should address the rates and the appropriate form of service for Winnfield." 16 F.E.R.C. ¶ 61,019, *supra*, at p. 61,033. If this was not clear enough, surely all doubt was removed when the prepared testimony submitted by the Commission staff recommended a specific average-cost rate. Winnfield's objection to this recommendation in its initial brief before the agency did *not* assert that average-cost rates were not lawfully at issue, but only that it had not been given enough time to respond to the staff's cost study. *See, e.g.*, Initial Brief (to the ALJ) of the City of Winnfield at 56–58, J.A. 421–22. (We think it unnecessary to address that more fact-bound challenge in this opinion, but we note in passing that in the pre-hearing stages of the proceeding Winnfield had announced that it would not perform its own cost-of-service study because of the expense, and would rely on that developed by the Commission. Transcript of Prehearing Conference, J.A. 35.)

We conclude that neither any universally applicable prohibition limiting the form of order that the Commission can issue under § 205 to forms of rates filed by the utility; nor, in the circumstances of this case, any notice requirement imposed by the "full hearing" provision of § 205, prevented the rates prescribed here. It would be empty formalism to strike down those rates solely because they were initially introduced into the proceeding by Commission staff rather than the utility itself. And it would be wasteful to require, instead of the sensible procedure adopted here, that the Commission first deny LP & L's requested increase and that the utility then commence a *separate* § 205 proceeding proposing the acceptable increase of

---

1. Although the contract's average-cost rates expired before the Commission resolved this matter, the Commission noted that they were the

only filed rates, and continued to apply them until the resolution of this case.

rates under the existing scheme that the Commission staff had suggested.

Petitioner asserts that one of the consequences of proceeding as the Commission did was that the utility did not satisfy the § 205 requirement of demonstrating that the approved rate was just and reasonable. The statutory obligation of the utility, however, is not to prove the continued reasonableness of *unchanged* rates or *unchanged* attributes of its rate structure. "[W]e cannot accept the proposition that because a company files for higher rates, it bears the burden of proof on those portions of its filing that represent no departure from the status quo.... The emphasis is on making the petitioner justify the changes in rates, not the constant elements." *Public Service Commission of New York, supra,* 642 F.2d at 1345. In this case, then, the utility had the burden of proving that its proposed new method of incremental cost rate computation was just and reasonable—a burden it was not able to sustain. It did not have the burden of proving the justness and reasonableness of the method of average cost rates already in place. Its burden in that regard was merely to justify the increase in those rates over the existing rates. Winnfield claims the

utility did not sustain this burden because it only introduced evidence relating to the incremental cost rate structure; only the Commission staff introduced evidence supporting the new rates. We disagree. The burden of proof requirement under § 205 relates to burden of persuasion (or, more accurately, risk of non-persuasion) rather than burden of production. *See* 18 C.F.R. § 2.17(e) (1983) (burden of proof to justify new rates referred to as "risk of non-persuasion").[2] *See generally* McCormick on Evidence § 336 (E. Cleary ed. 1984) (distinction between burdens of proof and persuasion). If evidence is introduced in the proceeding supporting a rate increase, the increase can lawfully be imposed, regardless of the source from which that evidence comes. In this case, the evidence introduced by the Commission staff satisfied the requirement of § 205.

*Petition Denied.*

---

**2.** There is nothing inconsistent in 18 C.F.R. § 35.13(e)(3), which does set forth a burden of production, requiring the utility "to go forward

... on reasonable notice" to sustain its burden of proof.